IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIK BLAIR, *on behalf of himself and similarly situated employees*,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC,<br><br>*Defendant.* | Civil Action No. 2:18-cv-254<br><br>Hon. William S. Stickman IV<br><br>Lead Case |
| VALERIE PITKIVITCH, *et al.*, *on behalf of herself and similarly situated employees*,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC, *et al.*,<br><br>*Defendants.* | Civil Action No. 2:18-cv-1667<br><br>Member Case |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, District Judge

Pending before the Court is the Motion of United States Secretary of Labor, Eugene Scalia, ("Secretary") (ECF Doc. 90), in which the Secretary seeks to intervene both as of right under Fed. R. Civ. P. 24(a)(2), or permissively under Fed. R. Civ. P. 24(b). Also pending before the Court is the Motion of Service Employees International Union Healthcare Pennsylvania ("SEIU") (ECF Doc. 110), in which SEIU seeks to intervene for the limited purpose of filing its Objection to

1

Plaintiffs' Motion for Preliminary Approval of Settlement Agreement (ECF Doc. 93). Plaintiffs and Defendants jointly oppose both motions. The issues are fully briefed, and for the reasons that follow, the Court grants the Secretary's Motion to Intervene (ECF Doc. 90) and denies SEIU's Motion to Intervene (ECF Doc. 110).

**I.   BACKGROUND**

Both the Secretary's and SEIU's Motions to Intervene arise out of the Secretary's related action in *Acosta v. Comprehensive Healthcare Management Services, LLC, et al.*, No. 2:18-cv-01608-WSS (W.D. Pa.) (hereinafter *Acosta*), in which the Secretary is litigating his Fair Labor Standards Act ("FLSA") suit against many of the same Defendants named in the current, consolidated action. The Secretary seeks to intervene as of right, or permissively, because the continued resolution of this case without the presence of the Secretary would contravene the standards of the FLSA. SEIU seeks to intervene for a more limited purpose of objecting to the proposed settlement agreement pending before the Court. As the parties are substantially familiar with the factual and procedural circumstances of this case and the Secretary's pending action in *Acosta*, only those factual and procedural circumstances relevant to the Secretary's and SEIU's Motions to Intervene are discussed below.

Both the Secretary's case and this case concern the conduct of residential skilled nursing, rehabilitation, and assisted living facilities in Western Pennsylvania, all of which are engaged in the care of the sick, mentally ill, and/or elderly. (ECF Doc. 86, ¶¶ 9–11); *Acosta*, (ECF Doc. 1, ¶¶ 4–6). The employees encompassed by the Secretary's pending matter in *Acosta* and in this case are the same, and include registered nurses, licensed practical nurses, certified nursing assistants, therapists, aides, admissions coordinators, clerks, cooks, social services coordinators, housekeeping and maintenance technicians, and administrative staff. *Acosta*, (ECF Doc. 1, ¶ 8);

(ECF Doc. 86, ¶¶ 15–18). According to Plaintiffs and the Secretary, these nursing facilities had a common practice or policy of, *inter alia*, keeping inaccurate time and pay records, and paying less to employees than what they were legally due. (ECF Doc. 86, ¶¶ 31–49); *Acosta*, (ECF Doc. 1, ¶¶ 7–10).

On February 28, 2018, Plaintiff, Erik Blair, filed suit under 29 U.S.C. § 216(b) on behalf of himself and others similarly situated, against Comprehensive Healthcare Management Services, LLC, alleging, *inter alia*, violations of the FLSA, Pennsylvania Minimum Wage Act ("PMWA"), Pennsylvania common law, and the Pennsylvania Wage Payment and Collection Law ("WPCL"). (ECF Doc. 1, ¶ 1). Blair's FLSA claims included the knowing failure to pay overtime under § 207(a), failure to maintain accurate records of time worked under § 211(c), and unlawful retaliation under § 215(a). (ECF Doc. 1, ¶¶ 50–87). Blair also requested relief in the form of liquidated damages under § 216(b). (ECF Doc. 1, ¶ 43).

On November 30, 2018, the Secretary brought suit pursuant to his authority under §§ 216(c) and 217 against numerous facilities, including Comprehensive Healthcare Management Services, LLC, *Acosta*, (ECF Doc. 1, ¶¶ 3–4), alleging several violations of the FLSA, including violations of §§ 207, 211(c) and 215(a). *Acosta*, (ECF Doc. 1, ¶¶ 1–10). The Secretary, however, alleged a larger time period, which included the time between December 14, 2018 through April 2018, and any violations continuing to occur afterward. *Acosta*, (ECF Doc. 1, ¶ 10). Prior to the filing of the Secretary's action in *Acosta*, this case had only the following eight employees who had opted-in under § 216(b): Erik Blair, Alana Richey, Anne Alcorn, Ashley Homer, Catherine Rumbaugh, Khara McNair, Kristi Gaynord, Melanie Adley, and Pat Mohr.

On December 14, 2018, Plaintiff, Valerie Pitkivitch, also named by the Secretary in his action, filed her class and collective suit under § 216(b) against Defendants Comprehensive

Healthcare Management Services, LLC, CHMS Group, LLC, Samuel Halper, and Ephram Lahasky. *Pitkivitch v. Comprehensive Healthcare Management Services, LLC, et al.*, No. 18-1667, (ECF Doc. 1, ¶¶ 6–9) (W.D. Pa.) (hereinafter *Pitkivitch*). She alleged various violations of the PWMA, WPCL, and Pennsylvania common law, and several violations of the FLSA, which again are substantially similar to those alleged in this case and in *Acosta*. *Pitkivitch*, (ECF Doc. 1, ¶¶ 1, 52–53, 71–84).

On March 2, 2020, the Court approved the parties' Consent Motion to Consolidate Erik Blair's and Valerie Pitkivitch's cases and closed the *Pitkivitch* matter. (ECF Doc. 85). The parties later filed their Amended Consolidated Complaint, naming Erik Blair, Valerie Pitkivitch, and Kimberly Horrell as named Plaintiffs. (ECF Doc. 86, ¶¶ 4–6). Kimberly Horrell was also named in the Secretary's action. *Acosta*, (ECF Doc. 1, Sch. A, p. 21). The Consolidated Amended Complaint included alleged violations of §§ 207(a), 211(c), and 215(a), and various state law claims under the PMWA, WPCL, and Pennsylvania common law. The Consolidated Amended Complaint specified that "so long as the *Acosta* action is ongoing, the FLSA collective . . . applies only to those opt-in Plaintiffs (eight of them) who opted into this action prior the filing of the *Acosta* action." (ECF Doc. 86, p. 13 n.1).

On June 22, 2020, Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement (ECF Doc. 93) was filed with the Court, in which Plaintiffs requested preliminary approval of the settlement of their state law claims under Rule 23. (ECF Doc. 94, p. 6). The proposed agreement provides for, *inter alia*, the release of any FLSA claims of current and prospective members of the class. (ECF Doc. 94, pp. 9, 12–13). The Secretary now seeks to intervene in this matter for the purpose of dismissing the claims of certain Plaintiffs on the grounds that they are precluded by the Secretary's pending FLSA action in *Acosta*, and, seeking a stay of

the state law claims of any employees whose FLSA claims are precluded by the Secretary's filing. (ECF Doc. 91, pp. 1–2). On the same note, SEIU seeks to intervene only to file its objection to the proposed settlement agreement. (ECF Doc .110, p. 3).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 24(a)(2) provides that a movant may be entitled to intervene in a case as a matter of right. The court must permit any party to intervene as a matter of right who: "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)–(2). The Third Circuit requires the satisfaction of four elements for intervention under Rule 24(a) to be proper: (1) timely application; (2) sufficient interest in the litigation; (3) threat that the interest will be impaired or affected by the disposition of the case; and (4) inadequate representation of the prospective intervenor's interest by existing parties. *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998) (citations omitted).

Alternatively, if a party cannot establish a right to intervene under Rule 24(a), it may request permissive intervention under Rule 24(b). Fed. R. Civ. P. 24(b). More specifically, Rule 24(b) permits an applicant to intervene who "is given a conditional right to intervene by federal statute; or . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Additionally, where a federal officer seeks to permissively intervene, a court may permit the same if the applicant's claim is or defense stems from "a statute or executive order administered by the officer or agency; or . . . any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). "In

exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The same timeliness inquiry that applies to Rule 24(a) applications applies equally to applications under Rule 24(b). *Wallach v. Eaton Corporation*, 837 F.3d 356, 371 (3d Cir. 2016). "[D]istrict courts have broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) (citation omitted). "[I]f intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992).

IV. **ANALYSIS**

A. **THE SECRETARY'S MOTION TO INTERVENE IS GRANTED.**

The Secretary seeks to intervene on the grounds that this case involves factual circumstances that are the same or much like those in *Acosta*, and furthermore, because Plaintiffs are seeking practically identical relief under the FLSA, resolution of this matter without the Secretary's presence would significantly prejudice both his obligations and the rights of the public under the FLSA.

As an initial matter, the parties agree that the Secretary has a significant legal interest in enforcing the provisions of the FLSA, and that this case concerns both similar claims and class members as the Secretary's pending action in *Acosta*. (ECF Doc. 91, pp.4–6). *See also* (ECF Doc. 104, p. 2) ("The Parties acknowledge that the Secretary's enforcement action . . . involves similar claims and, to some extent, overlapping class members. The Parties also acknowledge the Secretary's important role in prosecuting the Fair Labor Standards Act."). Thus, the Court will address in turn the timeliness of the Secretary's Motion, the potential threat to his interest, and the

representation of the current parties.

First, the Secretary contends that his intervention is timely on the grounds that this case is still in the early stages of litigation, and that no prejudice would come from his intervention. (ECF Doc. 91, p. 4). Defendants and Plaintiffs point out that the Secretary "has closely followed this [case] for the last 1.5 years . . . ." (ECF Doc. 104, p. 3), and that allowing the Secretary to intervene on the eve of settlement would substantially prejudice the parties. (ECF Doc. 104, pp. 3–4). Defendants and Plaintiffs specifically assert that the Secretary was aware of the settlement agreement in January 2020, and to that extent, the Secretary was "involved in numerous discussions over the last six months related to . . . settlement, the monetary component, the methodology, and the non-monetary terms." (ECF Doc. 104, p. 3). The Secretary, however, significantly disputes this on numerous grounds, and contends that the parties' contentions are misrepresentations to the Court.[1]

---

[1] The Secretary contends that he did not seek intervention because the parties consistently represented that he would be informed on the pertinent issues relating to the settlement. (ECF Doc. 105, p. 9). For instance, the Secretary asserts that "[t]he parties consistently represented that the settlement agreement would only address state law claims and FLSA claims of employees who joined before the Secretary filed his enforcement action." (ECF Doc. 105, p. 9). *See also* (ECF Doc. 105, Ex. A) ("the settlement is pursuant to Rule 23 . . . if the Motion is premised on the Department's belief that Chivers has resolved the case on behalf of individuals that he does not represent, we will contest that Motion as factually inaccurate."). The Secretary further notes that Plaintiffs' counsel encouraged the Secretary to delay intervention because the settlement agreement would be provided before it was filed with the Court. (ECF Doc. 105, p. 9). *See also* (ECF Doc. 109, Ex. B) ("As a courtesy [we] will provide you the papers before filed. My view at this point is that once you see the papers you will be able to better decide what you want to say in the intervenor motion . . . you will lose nothing by *holding off on the intervenor motion until I file the papers*, and may be better off by understanding how we are approaching this matter.") (emphasis added). In contrast with the representations of the parties, the Secretary contends that he was never provided the settlement agreement prior to filing. (ECF Doc. 105, p. 10). The Secretary states that, although he was involved in several discussions with the parties, he "has not been involved in *any* discussions with the parties regarding the terms of the proposed settlement 'over the last six months.'" (ECF Doc. 105, p. 10) (quoting ECF Doc. 104, p. 3). To the same extent, the Secretary represents that he "was not privy to any of the 'extensive meet-and-confer sessions and mediation sessions concerning the legal and factual theories asserted by Plaintiffs'

7

"The timeliness of a motion to intervene is 'determined from all the circumstances, and in the first instance, "by the [trial] court in the exercise of it[s] sound discretion."'" *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 324 (3d Cir. 1995) (quoting *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir. 1982)) (internal quotation marks omitted). Three factors are considered to address timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id.* (citation omitted). Courts are generally reluctant "to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Wallach*, 837 F.3d at 371 (quoting *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012)).

While the Court is aware that the Secretary's motion arrived near the time the parties submitted their proposed settlement agreement to the Court, considering all the circumstances set forth by the parties, the Secretary has set forth the reasons for his delay in filing—including what may be significant misrepresentations made by the parties in their discussions with the Secretary. As set forth below, disposing of the Secretary's motion on untimeliness grounds is particularly unwarranted given the harm the Secretary may suffer if prevented from intervening in this matter. *Wallach*, 837 F.3d at 371.

Second, the Secretary contends that his intervention is warranted under the circumstances

---

and Plaintiffs' counsel's analyses of the time and pay data for all putative class members.'" (ECF Doc. 105, p. 10) (quoting ECF Doc. 94-1, p. 3). The Secretary asserts that "prior to May 18, 2020, [he] had only spoken to Plaintiffs' counsel on approximately two occasions—first on May 30, 2019, and then again on May 18, 2020—after Defendants informed [him] that they had no intention o[f] continuing settlement discussions . . . [because] they had already negotiated a settlement . . . ." (ECF Doc. 105, p. 10). The Secretary further posits that he was not involved in any discussions involving "the monetary component, the methodology, and the non-monetary terms" of the settlement. (ECF Doc. 105, p. 10).

because his interests would be substantially impaired in his absence. (ECF Doc. 91, p. 6). More specifically, proceeding with this case in the Secretary's absence would impair both his ability to ensure employees receive the full amount of back wages and damages under the FLSA, and his interest in preventing discriminatory employment practices. (ECF Doc. 91, pp.6–9). Defendants and Plaintiffs jointly contend that the Secretary would not suffer any impairment. (ECF Doc. 104, pp. 4–6).

To establish whether a party's interest is in jeopardy, an applicant "must demonstrate that [its] legal interests may be affected or impaired[] as a practical matter by the disposition of the action." *Commonwealth of Pennsylvania v. President United States of America*, 888 F.2d 52, 59 (3d Cir. 2018) (quoting *Brody*, 957 F.2d at 1122). "It is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Id.* (quoting *Brody*, 957 F.2d at 1123). The inquiry focuses on the practical effects of the litigation, and the court "may consider any significant legal effect on the applicant's interest, including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *Id.* (quoting *Brody*, 957 F.2d at 1122–23). There is a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id.* (quoting *Kleissler*, 157 F.3d at 970) (internal quotation marks omitted).

The Secretary primarily argues that there are several individuals here that cannot seek relief because they are precluded from doing so by the Secretary's filing in *Acosta*, and furthermore, the proposed settlement agreement of the putative Rule 23 class's state law claims could potentially waive any rights those individuals have under the FLSA, a result which the Secretary contends is unlawful. (ECF Doc. 91, pp. 6–8); (ECF Doc. 105, pp. 4–8). Plaintiffs and Defendants do not address the Secretary's concerns in their briefing, but limit their discussion to how the Secretary's

9

general, broad interests in enforcing the FLSA are not stifled, without recognizing the implications and consequences that the proposed settlement agreement may have on the Secretary's pending matter in *Acosta*, and for that matter, his broad interests in enforcing the provisions of the FLSA. (ECF Doc. 104, pp. 4–6).

To begin, the Secretary contends that several individuals in this suit are not entitled to continue seeking relief because they are barred from doing so under 29 U.S.C. §§ 216(b) and 216(c). 29 U.S.C. § 216(b) allows an aggrieved employee to bring a collective action against an employer if he affirmatively opts into the collective action. 29 U.S.C. § 216(b). The plain language of §§ 216(b) and 216(c) further establishes that the same right of the aggrieved employee under § 216(b) is terminated upon the Secretary's filing, whether that filing is pursuant to §§ 216(c) or 217. *See* 29 U.S.C. § 216(b) ("The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title . . . ."); 29 U.S.C. § 216(c) ("The right provided by subsection (b) to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection . . . ."). In accordance with these principles, the Secretary points out that several individuals—Ashely Homer, Valerie Pitkivitch, and Kimberly Horrell—joined this case after the Secretary filed his action in *Acosta* and, therefore, those individuals were joined unlawfully, contrary to the provisions of the FLSA. (ECF Doc. 91, p. 7). The participation of the same individuals in this suit would indeed infringe on the plain language of §§ 216(b) and 216(c), and for that matter, would serve to circumvent the Secretary's interest in the enforcement of the FLSA.

10

Furthermore, while it may be the case that the named individuals above are infringing on the Secretary's right to enforce the provisions of the FLSA, the substance of the alleged harm comes from the proposed settlement agreement between the parties. The Secretary argues that allowing this case to proceed with settlement would potentially allow the parties to bypass the Secretary's action in *Acosta*, and to that extent, could allow putative class members to seek a portion of the Rule 23 class settlement of state law claims in return for their release of any FLSA claims. This result, the Secretary contends, conflicts with the provisions of the FLSA, and more prejudicially, such a result may have a preclusive effect in *Acosta*. (ECF Doc. 91, pp. 6–10). *See also* (ECF Doc. 91, Ex. B) ("It is [Defendants'] position that even for those class members who are involved in the Department's action, and who do not release their FLSA claims by way of our settlement, the wages that they receive from the private settlement will preclude recovery of monetary damages through the DOL's enforcement action.").

Suffice it to say, the Secretary has sufficiently established that his interests in enforcing the provisions of the FLSA are threatened by continuing this litigation in his absence because doing so would potentially allow individuals currently participating in this suit to continue participating in violation of §§ 216(b) and 216(c). Resolution of the parties' proposed settlement agreement in its current form may have the effect of precluding the claims of individuals in his pending FLSA action.

Finally, the Secretary contends that the existing parties cannot adequately represent his interests. (ECF Doc. 91, p. 9); (ECF Doc. 105, pp. 12–15). The parties contend they have, and will continue, to adequately represent the interests of the Secretary because they have diligently worked to solidify a settlement agreement, and the Secretary is free to pursue his own interests in the related *Acosta* matter. (ECF Doc. 104, pp. 8–9).

Inadequate representation is necessarily present if "an applicant's interests . . . diverge sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests.'" *President United States of America*, 888 F.3d at 60 (quoting *Virgin Islands*, 748 F.3d at 520). "This burden is generally 'treated as minimal' and requires the applicant to show 'that representation of his interest "*may be*" inadequate.'" *Id.* (quoting *Mountain Top*, 72 F.3d at 368). "Notwithstanding that minimal burden, a rebuttable presumption of adequacy applies 'if one party is a government entity charged by law with representing the interests of the applicant for intervention.'" *Id.* (quoting *Virgin Islands*, 748 F.3d at 520). "But even when the government is a party, '[t]he burden of establishing inadequacy of representation . . . varies with each case.'" *Id.* (quoting *Kleissler*, 157 F.3d at 972). "For that reason, the presumption is particularly strong when the governmental and private interests 'closely parallel' one another . . . or are 'nearly identical . . . .'" *Id.* (quoting *Virgin Islands*, 748 F.3d at 525). "In those cases, a proposed intervenor will overcome the presumption only with a 'compelling showing.'" *Id.* (quoting *Virgin Islands*, 748 F.3d at 520). "By contrast, 'when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light.'" *Id.* at 61 (quoting *Kleissler*, 157 F.3d at 972).

The goal of § 216(b) is "to encourage the bringing of suits by employees and thus obviating and minimizing the litigation expenses of the Secretary of Labor . . . ." *EEOC v. Am. Tel. & Tel. Co.*, 365 F. Supp. 1105, 1121 (E.D. Pa. 1973), *aff'd*, 506 F.2d 735 (3d Cir. 1974). "[T]he statute allows successful employees to be awarded liquidated damages in an amount equal to . . . unpaid minimum wages[,]" and "permits recovery of reasonable attorney's fees and court costs." *Id.* "The most liberal form of relief, however, is found in [§] 17, whereunder the Secretary of Labor, without

being dependent upon the submissions of written requests by affected employees as in [§] 16(c), can come into court as the guardian of the public interest to restrain the present and future violations of [the] FLSA by the employer." *Id.* "Only the Secretary of Labor is vested with the exclusive authority for filing a suit under [§] 17 to restrain FLSA violations." *Id.* (citations omitted). Additionally, "the relief obtainable under [§] 17, as distinguished from that allowable under [§§] 16(b) or (c), is derived from equity and is not limited to restitutory sustenance. Rather an action under [§] 17 is one for the vindication of the public interest." *Id.* "The history and purpose of the [FLSA] and of § 17, both in its wording and in its relationship to the other sections of the Act, make it abundantly clear that § 17 was designed and enacted as a necessary measure to assure the effective and uniform compliance with and adherence to a public policy, relating to wage standards for labor, adopted in the National interest." *Id.* (quoting *Wirtz v. Jones*, 340 F.2d 901, 903 (5th Cir. 1965)). *See also Donovan v. Univ. of Texas at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("[A] [§] 17 suit . . . cannot be deemed a representative action on behalf of the individual employees of the type governed by a Rule 23 action . . . . [In] a [§] 17 suit, the government is more interested in eliminating discriminatory practices than securing full backpay relief for the victims of the discrimination. [§] 17 expressly emphasizes restraining violations of the FLSA, while [§] 16(c) authorizes the Government to 'supervise the payment of unpaid wages,' . . . although the Court is not foreclosed statutorily in ordering restitution of backpay wages in a proper case. Thus, in no sense is the Government a mere representative of private interests where it brings suit under [§] 17.")

> [T]he purpose of the injunction to restrain the withholding of wages due is not to collect a debt owed by an employer to his employee *but to correct a continuing offense against the public interest*. It is true that as a result, money may pass from the employer into the pocket of the employee or, if he is not available, then into the coffers of the United States Treasury, but that enforced payment, which must be made even if the employee or his representatives or heirs no longer exist to claim

13

it, is simply a part of a reasonable and effective means which Congress, after trial and error, found it necessary to adopt to bring about general compliance with § 15(a)(2). In the course of his remarks in presenting the bill for the 1961 amendment to the Act, President Kennedy, then Senator, said, with reference to the enforcement provisions, "it will serve as a source of protection to employers who pay a decent wage and who must compete with employers who pay a substandard wage."

*Am. Tel. & Tel. Co.*, 365 F. Supp. at 1122 (quoting *Wirtz*, 340 F.2d at 904–05) (alterations to original).

Accordingly, while there may be some overlap with regard to the Secretary's and Plaintiffs' interests in obtaining the wages they are lawfully entitled to—whether the avenue for relief comes from § 216(b) or § 216(c)—the Secretary's interests in publicly enforcing the provisions of the FLSA under § 217 are quite different from those of private individuals seeking relief under § 216(b) of the FLSA. Therefore, because the Secretary has sufficiently established that his intervention here was timely, that his interests may be threatened in his absence, and that the current parties do not share the same interests as the Secretary, the Secretary's Motion to Intervene (ECF Doc. 90) is granted. The Court holds the Secretary is entitled to intervene as of right.

### B. SEIU'S MOTION TO INTERVENE IS DENIED.

SEIU requests intervention as of right, or permissively, for the limited purpose of filing its objection to the proposed settlement agreement between Plaintiffs and Defendants. (ECF Doc. 110, p. 3). SEIU contends generally that it is the statutory and contractual representative of many employees involved.[2] (ECF Doc. 110, pp. 6–7); (ECF Doc. 115, pp. 3–5). SEIU specifically

---

[2] SEIU generally asserts that it is the statutory representative of various employees under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185, (ECF Doc. 110, p. 6), and under the same authority, SEIU must ensure the employees "receive the maximum amount available under the FLSA." (ECF Doc. 110, p.7). *See also* (ECF Doc. 110, p. 6) (discussing how § 185 "confers broad representational rights to the Union on behalf of [the] employees."). § 185 provides labor organizations with general authority to sue or be sued "as an entity and in behalf of the employees whom it represents . . . ." 29 U.S.C. § 185. It does not, however, confer authority upon a labor union to bring suit on behalf of its employees under the FLSA. *See infra* page 15.

asserts that it has "an interest, one which . . . Plaintiffs do NOT have, to ensure that the unlawful practices have ceased . . . and will not continue in the future." (ECF Doc. 115, p. 4). *See also* (ECF Doc. 115, pp. 5–6) ("It is the Union's obligation to seek the maximum amount of payment . . . and protect [the] interests of the members . . . ."); (ECF Doc. 115, p. 3) ("[SEIU's] interest is its legal duty to advocate so that its members get the greatest benefit and broadest available relief from all of the pending litigation before the Court."). The parties assert that SEIU has no interest in this litigation. (ECF Doc. 113, pp. 2–4).

The Court agrees that SEIU has no cognizable interest in this case. *See Am. Tel. & Tel. Co.*, 365 F. Supp. at 1119–23 (denying labor union's motion to intervene as a party plaintiff and finding that the labor union had no statutorily conferred interest under § 216(b) because that section conferred the right to bring suit on the individual employees, and similarly, the labor union lacked authority to sue under §§ 216(c) and 217 because those sections conferred upon the Secretary the right to enforce the FLSA). *See also United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc.*, 207 F.3d 1193, 1200–01 (10th Cir. 2000) (discussing the same and collecting cases). SEIU, by its own words, asserts an interest that is not its own by attempting to cloak itself with the authority of the employees and the Secretary. Furthermore, SEIU's proposed intervention only to object to the proposed settlement agreement is unnecessarily duplicative because SEIU seeks to reiterate the arguments the Secretary makes in his Motion to Intervene, and apparently will make if permitted to move to dismiss (ECF Doc. 91-1) and object (ECF Doc. 105-3).[3] Accordingly, SEIU's Motion to Intervene as of right is denied, and for the

---

[3] "The Union hereby incorporates and joins . . . all of [t]he arguments made by the Department of Labor . . . particularly those encompassed by the DOL's Motion to Intervene, . . . to which it proffered pleading, Motion to Dismiss FLSA Claims and Stay State Law Claims with Memorandum in Support . . . . The Union seeks to intervene and support such relief although ours is styled as an Objection to the Proposed Class Certification and Settlement given that the Union

same reasons, SEIU's Motion to Intervene permissively is denied. *See Brody*, 957 F.2d at 1124 ("[I]f intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well.").

## V.    CONCLUSION

For the reasons set forth above, the Secretary's Motion to Intervene (ECF Doc. 90) is granted because the Secretary has sufficiently established that his motion was timely filed, that he has significant interests, that the same interests may potentially be jeopardized in his absence, and that the current parties to the litigation do not adequately represent his interests. SIEU's Motion to Intervene (ECF Doc. 110) is denied because SEIU has not established that it has a recognized interest in this litigation. An Order will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11-17-2020
_____
Date

---

does not seek to participate in the litigation of either of these cases[,] but only to weigh in on the inadequacy of the proposed private settlement agreement between Plaintiffs and Defendants." (ECF Doc. 110-1, p. 4).